**SO ORDERED.**

**SIGNED this 23 day of February, 2011.**



_____Dale L. Somers_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for print publication

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

ALEN RAY HOWLEY and
JEANNIE MARIE HOWLEY,

                    DEBTORS.

CASE NO. 10-20713
CHAPTER 7

**MEMORANDUM OPINION AND ORDER**
**DENYING DEBTOR'S MOTION TO ALTER OR AMEND**
**MEMORANDUM OPINION AND ORDER**
**SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTION CLAIM**

The matter before the Court is Debtor Jeannie Marie Howley's (hereafter

"Debtor") Motion to Alter or Amend Judgment Sustaining Trustee's Objection to

Exemption (hereafter "Motion to Amend").[1]  Debtor asks the Court to amend its

---

[1] Doc. 41.

Memorandum Opinion and Order Sustaining Trustee's Objection to Debtor's Exemption

Claim, filed on October 26, 2010, as Document 38 (hereafter "Memorandum").[2]  In that

Memorandum, the Court denied Debtor's claim of exemption of her interest in per capita

payments from the Prairie Band of Potawatomi Indians.  Debtor now requests the Court to

amend the Memorandum to include a finding that Debtor's interest, as of the date of filing

of her petition, in per capita payments anticipated to be received postpetition is not

property of the estate.  For the reasons stated below, the Court denies the Motion to

Amend and holds that Debtor's interest on the date of filing in future per capita payments

is property of the estate.

**FINDINGS OF FACT.**

The following Findings of Fact stated in the Memorandum are applicable to the

Motion to Amend.  Debtors Alen and Jeannie Howley filed for relief under Chapter 7 on

March 14, 2010.  On Schedule C of Debtors' voluntary petition they claimed Debtor

Jeannie Howley's Per Capita Income accruing from gaming revenues of the Prairie Band

of Potawatomi Indians (hereafter "Prairie Band") in the amount of approximately $400

per month (hereafter "Per Capita Payments") under § 4-10-16(H) of the Potawatomi Law

and Order Code (hereafter "Tribal Code").  Since 2007, Debtor has resided in Lecompton,

Kansas and from 2002 to 2007 resided in Topeka, Kansas.  She has never resided on the

Prairie Band reservation located near Mayetta, Kansas.

---

[2] The Memorandum is published at 439 B.R. 535.

The Motion to Amend does not attempt to supplement these facts.

**PROCEDURAL CONSIDERATIONS.**

As a preliminary matter, the Court finds the Motion to Amend could be denied based solely upon procedural grounds. The Motion to Amend does not assert grounds permitted under the applicable rule. Local Rule 7.3, Motions to Reconsider, provides that a motion to reconsider non-dispositive orders must be based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." Debtor's Motion is not based upon any of these permitted grounds.

In addition, when responding to the Trustee's objection to exemption of Per Capita Payments, Debtor did not present the argument that her right to the payments is not property of the estate. In fact, the Debtor conceded that her right to the payments is property of the estate. In note 13 of the Memorandum, the Court stated:

> The first argument made by the Trustee is that the Per Capita Payments are property of the estate and not subject to the 11 U.S.C. § 541(c)(2) exclusion for beneficial interests of the debtor held in a trust. Doc. 28, pp. 3-5. He cites numerous cases, including *In re McDonald,* 353 B.R. 287, 293-94 (Bankr. D. Kan. 2006), from this district. Debtor does not refute this position. Doc. 30. Indeed, by taking the position that the payments are exempt, Debtor is conceding that they are property of the estate, since it is only property of the estate which can be exempted from the estate.

As acknowledged by Debtor in her brief, the purpose of the Motion to Amend is to oppose the Trustee's claim to postpetition Per Capita Payments on the basis that the

3

Trustee has no interest in the payments since they are not property of the estate. In other words, the Motion to Amend is unrelated to Debtor's claim that the Per Capita Payments are exempt, which was the argument addressed by the Memorandum. A motion to alter or amend is not a vehicle to raise new issues which were not previously presented for consideration in the first instance.[3]

Nevertheless, the Court finds that judicial economy supports considering the merits of the Motion to Amend and elects to do so. Undoubtedly, if the Court were to deny the Motion to Amend on procedural grounds, either Debtor or the Trustee would present the same issue in a different procedural context. Debtor and the Trustee have briefed the issue, and there is no just reason to require resubmission. In addition, the issue of an estate's interest in a debtor's interest in postpetition per capita distributions from Indian gaming revenues is likely to arise in other cases in this jurisdiction.

**DEBTOR'S FUTURE RIGHT TO PER CAPITA DISTRIBUTIONS IS
PROPERTY OF THE ESTATE.**

The Court therefore addresses the issue, as framed by the Debtor, of "whether or not per capita payments not due to joint debtor Jeannie Marie Howley on the petition date are property of the estate per 11 U.S.C. §541."[4] This issue arises because, after the Memorandum was issued, the Trustee made demand for Per Capita Payments Debtor "has

---

[3] *See Comeau v. Rupp*, 810 F Supp. 1172, 1175 (D. Kan. 1992).

[4] Doc. 47, p. 2.

4

received or will receive after the petition date and which were not due and payable when

the petition was filed."[5]

When answering the question of whether Debtor's interest in Per Capita Payments

is property of the estate, the Court first examines the attributes of the Debtor's interest.

What are Debtor's legal and equitable rights in the tribal distributions?  This question is

answered by examination of the federal law governing tribal gaming and the Potawatomi

Per Capita Ordinance (hereafter "Ordinance") governing Per Capita Payments.[6]  The

Indian Gaming Regulatory Act ("IGRA")[7] authorizes tribes to negotiate and obtain

gaming compacts with the states, which are authorized to permit and regulate casino style

(Class III) gaming.  The IGRA requires, in addition to a compact with the appropriate

state, that the tribe adopt an ordinance regarding the disposition of gaming revenues.  The

ordinance must provide that the revenues from casino style gaming will be used for the

following  purposes: Tribal government operation; the general welfare of the tribe and its

members; economic development; charitable donations; and operations of local

government.[8]  The IGRA permits, but does not require, making per capita distributions to

tribal members, if the tribe has prepared a plan to allocate revenues which plan is

approved by federal authorities as adequate, the interests of minors and incompetents

---

[5] Doc. 41, p. 2.

[6] Doc. 28-2.

[7] 25 U.S.C. § 2701 et. seq.

[8] 25 U.S.C. §§ 2710(b)(2), made applicable to class III gaming by 25 U.S.C. § 2710(d)(2)(A).

5

entitled to distributions are protected, and the payments are subject to federal income tax.[9]

The Potawatomi Indians have elected to allocate a portion of net gaming revenues to per capita payments and have adopted the Ordinance, which apparently was approved by federal authorities. The Ordinance adopts an allocation plan under which net gaming revenues shall be distributed 30% to fund or supplement tribal government operations and programs; 30% for distributions to all eligible enrolled tribal members; 37% to fund tribal economic development; 1% for charitable purposes; and 2% for the general welfare of the tribe and its members. Although the allocation of revenues devoted to per capita distributions and the other categories may be amended by the Tribal Council, if funds for other categories are insufficient, or by majority vote of the General Council even if such insufficiency has not occurred, there is no evidence in this case that the payment percentage has ever been amended. The Ordinance provides that "[e]very living person who is an enrolled member of the Prairie Band of Potawatomi Indians on the eligibility determination date is eligible to receive a Per Capita Payment." Membership in the Prairie Band is defined in the tribal constitution as follows: All persons born prior to February 19, 1976 who qualified under previous membership standards; as to persons born after February 19, 1976, who possess at least 1/4 degree Indian blood who are descendants by blood of Prairie Band Potawatomi allottees of Prairie Bank Potawatomi Indian blood and whose applications were received prior to May 13, 2000; and all persons

---

[9] 25 U.S.C. § 2710(b)(3)(A), made applicable to class III gaming by 28 U.S.C. §2710(d)(2)(A).

6

who possess at least one-fourth degree Prairie Brand Potawatomi Indian blood.[10] Every eligible Potawatomi tribal member receives an equal share of the funds distributed.[11]

The foregoing describes a life-time right to distribution of gaming proceeds based upon membership status. Tribal membership status, once established based upon ancestry, is fixed and is not dependent upon future events. Although the amount of each distribution is obviously based upon the amount of net gaming revenues and the number of enrolled members on the allocation date, the right to share in each distribution is based upon status as an enrolled member, nothing else. There is no provision allowing the tribe to withhold distribution to any enrolled member. The readily apparent contingencies which could terminate Debtor's right of participation are death, the tribe's termination of Class III gaming, or the tribe's decision to revoke its election to use gaming revenues in part to fund per capita payments, none of which, in the Court's estimate, appear likely.

When defining property for purposes of § 541, courts are directed to analyze interests under state law, since "Congress has generally left the determination of property rights in assets of a bankrupt's estate to state law."[12] Kansas law recognizes contingent interests as property.[13] The Court has no doubt that the Kansas courts would recognize

---

[10] Constitution of the Prairie Band Potawatomi Nation, Art. III, available at www.pbpindiantribe.com/our-constitution.aspx

[11] Ordinance, Article V.

[12] *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

[13] *See Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1205 (10th Cir. 2010); *In re Allen Bros. Truck Lines, Inc.*, 329 F.2d 735, 737 (10th Cir. 1964).

Debtor's interest in future Per Capita Payments as a property interest.  The question is then whether that interest is property of the estate, as defined by federal law.  Section 541(a) defines property of the estate as including all legal and equitable interests of the debtor in property as of the commencement of the case.  "[T]he scope of § 541 is broad and should be generously construed."[14]  "[A]n interest may be property of the estate even if it is 'novel or *contingent*.'"[15]  "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of 11 U.S.C. § 541."[16]

The Court finds that the Debtor's interest in Per Capita Payments is similar to other property interests which have been recognized as being property of the estate.  For example, a debtor's right to lottery proceeds to be paid postpetition as proceeds of an annuity owned by the state is property of the estate.[17]  Insurance renewal commissions received postpetition are property of the estate, if all of the actions required to earn the commissions were completed prepetition.[18]  A Chapter 7 debtor's Earned Income Tax Credits (EICs) for a tax year, as prorated to date of the petition filing, are estate property

---

[14] *Dittmar*, 618 F.3d at 1207.

[15] *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000), *quoting Barowsky v. Serelson*, 946 F.2d 1516, 1518-19 (10th Cir. 1991) (emphasis added).

[16] *Dittmar,* 618 F.3d at 1207*, quoting In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

[17] *In re Neto*, 215 B.R. 939 (Bankr. D.N.J. 1997).

[18] *In re Wicheff*, 215 B.R. 839 (6th Cir BAP 1998).

regardless of whether the petition was filed prior to end of the tax year, even though debtor's interest in EIC was not finalized until the end of the tax year.[19]

Several courts have ruled that per capita payments payable to debtors from Indian gaming revenues are property of the estate. Two of the decisions, *Hutchinson*[20] and *McDonald*,[21] are from this district and, like this case, concern payments from the Prairie Band of the Potawatomi Tribe. In both cases, under facts undistinguishable from this case, Bankruptcy Judge Karlin held that the postpetition right of debtors, members of the Prairie Band of Potawatomi Indians, to receive payments was property of the estate. Judge Karlin relied upon the two reported cases, *Johnson*[22] and *Kedrowski*[23] which found such distributions to be property of the estate. In *McDonald*, the court stated, debtors "did not deny that the property in question is property of the estate, and the Court finds that it clearly is."[24] In *Hutchinson*, even though debtors did not "appear to contest" whether the per capita distributions, "including the right to receive them in the future, constitute property of the estate," Judge Karlin held they were property of the estate.[25]

---

[19] *Montgomery*, 224 F.3d at 1193.

[20] *In re Hutchinson*, 354 B.R. 523 (Bankr. D. Kan. 2006).

[21] *In re McDonald*, 353 B.R. 287 (Bankr. D. Kan. 2006).

[22] *Johnson v. Cottonport Bank*, 259 B.R. 125 (D.W.D. La. 2000).

[23] *In re Kedrowski*, 284 B.R. 439 (Bankr. W.D. Wis. 2002).

[24] *McDonald,* 353 B.R. at 291.

[25] *Hutchinson*, 354 B.R. at 527-28.

In *Johnson*,[26] a bank had filed for stay relief seeking to continue collecting a loan secured by an interest in the Chapter 7 debtor-tribal member's monthly per capita distributions, and the Trustee moved that additional distributions be turned over to the Trustee as property of the estate.  The bankruptcy court granted both requests, and the district court affirmed.  On appeal of the second ruling, the debtor contended that the payments were not property of the estate because they "are not property at all."[27]  The court found that the debtor's right to receive the distributions was a property right when the petition was filed.  "Louisiana law recognizes intangible property, including an interest in the future income from a trust, a right to receive an annuity, and a share of ownership or the right to receive payments from an entity such as the Tribe."[28]  In addition the court noted that the debtor's right to receive the payments was freely transferable and debtors had not demonstrated that any exemption or exclusion under state or federal law prevented the payments from being considered as property of the estate.

*Kedrowski*[29] is a bankruptcy court decision from the Western District of Wisconsin holding the property of the estate included debtor's "right" to receive per capita distributions from the Ho-Chunk Nation.  After an extensive examination of Indian

---

[26] *Johnson*, 259 B.R. at 125.

[27] *Id*. at 130.

[28] *Id.*

[29] *Kedrowski*, 284 B.R. at 439.

Case 10-20713   Doc# 57   Filed 02/23/11   Page 10 of 15

gaming law and the Ho-Chunk Nation Code, the court rejected the debtor's contention

that the per capita payments are not property because tribal members do not have an

entitlement to gaming distributions, since the tribe is not obligated by federal law to make

the distributions and various circumstances beyond the debtor's control, such as her death

or a change in the tribe policy, could affect her ability to receive future distributions.[30]

The court noted that it was undisputed that the debtor was an enrolled member of the tribe

and if the tribe does make a distribution, debtor has a "right" to participate.  The "right"

was found similar to that of one who owns stock in a company or a limited partnership

interest; if the company prospers and decides to make distributions the owner of the

interest holds some sort of intangible property interest under Wisconsin law.  Precedent

from the HO-Chunk Nation's court evidenced that enrolled members were regarded as

having a right to per capita distributions which raised them above the status of a license or

a gift.  The court concluded its analysis as follows:

> In conclusion, the Court finds that the debtor's "right"
> to receive a per capita distribution from the gaming revenues
> of the Ho-Chunk Nation does constitute property of her
> bankruptcy estate.  No provision of federal law, the gaming
> compact between the tribe and the state of Wisconsin, or the
> tribe's per capita distribution ordinance suggests a contrary
> result.  In fact, when taken together, these sources compel the
> result reached by the Court.  Quite simply, the debtor holds an
> "absolute right" to receive net revenues from the operation of
> a tribal business.  The mere possibility that the tribe might not
> choose to make a distribution may mean that the debtor's right

---

[30] The *Kedrowski* court also considered the specific provisions of the Ho-Chunk Nation Code in conjunction with its rejection of the debtor's position that if the right to payment was property of the estate, it was excluded from the estate by § 541(c)(2). *Id.*, 284 B.R. at 449-451.

does not have any intrinsic or marketable value, but it does not alter the fact that it is "representative" of value.[31]

Debtor relies primarily upon *Fess*,[32] which, contrary to *Kedrowski* and *Johnson*, holds that per capita distributions are not property of the estate. Like *Kedrowski*, *Fess* concerns payments from the Ho-Chunk Nation. Unlike *Kedrowski*, *Fess* finds the Ho-Chunk Nation Code requires that the payments be excluded from the estate. The code provisions relied upon were the following:

> Per Capita Distributions shall be made, when and as determined or declared in accordance with Per Capita Distribution Ordinance and any and all other applicable laws of the Nation, out of assets and earnings of the Nation, and such assets and earnings shall retain their character as property of the Nation until Payment of Per Capita Shares is actually made therefrom.
>
> No Tribal Member, nor any person claiming any right derived from a Tribal Member, including creditors of a Tribal Member, shall be entitled to compel the making of any Per Capita Distribution prior to the time of Payment thereof, and making each Per Capita Distribution, and the amount and timing thereof, shall at all times prior to Payment be subject to elimination or modification pursuant to any amendment to the then effective Per Capita Distribution Ordinance adopted in accordance with the Constitution and laws of the Nation.
>
> No Tribal Member, nor any person claiming any right derived from a Tribal Member, including creditors of a Tribal Member, shall have any right, title, interest or entitlements in

---

[31] *Id*. at 451-52.

[32] *In re Fess*, 408 B. R. 793 (Bankr. W.D. Wis. 2009).

12

any Per Capita Share unless and until Payment of Per Capita Distribution to which it relates occurs.[33]

The *Fess* court held that federal law and tribal law, not state law, applied to define property interests, and under that law debtors merely had "an expectancy to which no legal rights attach."[34]

The Court declines to follow *Fess*. The difference in the outcomes of *Kedrowski* and *Fess* clearly rests upon differing interpretations of the Ho-Chunk Nation Code. While *Kedrowski* rejected the debtor's argument that per capita payments were not property because under the tribal law members had no right or entitlement to gaming distributions, the *Fess* court found this position determinative.

Since the Potawatomi Tribal Ordinance does not have provisions similar to those of the Ho-Chunk Nation Code which controlled the outcome in *Fess*, this Court is not faced with the same issues of construction. The Ordinance has no provision stating that the funds to be used for payments retain their character as property of the tribe until actually disbursed, there is no provision limiting rights to compel payments, and there is no provision stating that a tribal member has no right, title, or interest until disbursements are made. Rather, the Ordinance provides that "[a]ny dispute regarding this ordinance, implementation thereof, or action taken thereunder shall be first presented to the Tribal Council whose decision may then be appealed to the Potawatomi Tribal Court, whose

---

[33] *Id*. at 797, quoting Ho-Chunk Nation Code § 8, 4.

[34] *Id.* at 799.

decision shall be final." Payments are made within 30 days after the Per Capita Payment date by tribal check, except in the case of incompetents or minors. The Ordinance sets 30% as to percentage of net gaming revenues to be used for per capita distributions. Although the percentage of revenues devoted to per capita distributions may be amended by the Tribal Council, if funds for other categories are insufficient, or by majority vote of the General Council, there is no evidence in this case that the payment percentage has ever been amended. The Ordinance states, "Every living person who is an enrolled member of the Prairie Band of Potawatomi Indians on the eligibility determination date is eligible to receive a Per Capita Payment." Entitlement to distribution is based upon status as an enrolled member, nothing else.

The Court therefore concludes that on the date of filing, Debtor's estate included her contingent right to receive future Per Capita Payments. Inclusion of the property right in the estate, of course, does not determine its value. The Chapter 7 Trustee is entitled to the value of the future payments as of the petition date, which, because of the contingencies involved, may not be equal to the present value of all anticipated future payments. Valuation is a matter left for future determination.

**CONCLUSION.**

Debtor's Motion to Amend is denied. As of the petition date, Debtor's interest in future Per Capita Payments from the gaming revenues of the Potawatomi Nation was

14

property of the estate.

**IT IS SO ORDERED.**

### ###

15